OPINION
{¶ 1} Plaintiff-appellant American Modern Home Insurance Company ("American") brings this appeal from the judgment of the Court of Common Pleas of Crawford County denying its motion for summary judgment and ordering American to provide coverage to defendant-appellee Mark A. Hagopian ("Hagopian").
{¶ 2} On August 9, 1999, Hagopian, then an employee of Teynor's Homes ("Teynor") was injured when a modular home he was installing tipped and pinned him to the ground.[1] American was the insurer for Teynor at the time of the incident. On August 8, 2000, Hagopian filed a complaint alleging an intentional tort against Teynor. The complaint alleged that Teynor failed to properly train and instruct him, failed to provide the proper safety equipment, and instructed him to install manufactured homes in an improper and unsafe manner. Hagopian claimed that Teynor knew that the alleged failures and instructions would be substantially certain to cause him injury.
{¶ 3} On October 17, 2000, American filed a complaint for declaratory judgment claiming that it had no duty to defend or insure Teynor. The claim was based on the policy language that specifically excludes coverage for intentional torts and for employment related injuries. On November 1, 2001, American filed a motion for summary judgment on its complaint for declaratory judgment. The trial court overruled the summary judgment motion on April 26, 2002. It is from this judgment that American brings this appeal and raises the following assignments of error.
{¶ 4} "The trial court erred, to the prejudice of [American], in denying [American's] motion for summary judgment.
{¶ 5} "The trial court erred, to the prejudice of [American], in finding case of [Maffett v. Moyer's Auto Wrecking, Inc (June 7, 2000), Crawford App. No. 3-99-11, 3-99-12, unreported] to be controlling in the present case.
{¶ 6} "The trial court erred, to the prejudice of [American], in failing to apply and adhere to the syllabus of the Ohio Supreme Court in [Wedge Products, Inc. v. Hartford Equity Sales Co. (1987),31 Ohio St.3d 65]."
{¶ 7} Since all of the assignments of error address the appropriateness of the denial of summary judgment, we will address them together. This court notes that a motion for summary judgment was filed in a declaratory judgment action. The purpose of a declaratory judgment action is to set forth the rights and responsibilities of the parties and does not contain any material issues of fact. Thus, the filing of a motion for summary judgment in a declaratory judgment action is not a good practice because it does not resolve the issues before the trial court. Haberley v. Nationwide Mut. Fire Ins. Co. (2001),142 Ohio App.3d 312, 755 N.E.2d 455. However, in this case, the trial court did set forth the rights and responsibilities of the parties in its denial of summary judgment which essentially resolved the complaint for declaratory judgment. Thus, we will treat this matter as a resolution of the declaratory action.
{¶ 8} The matter before this court involves the interpretation of an insurance contract. The question presented is whether American, by the terms of the policy is required to defend its insured against Hagopian's claims. At the time of the incident, American provided a policy to Teynor that included the following language.
{¶ 9} "[1.a.] We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury', `property damage', personal injury' or `advertising injury' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages. We may at our discretion investigate any `occurrence' or offense and settle any claim or `suit' that may result." Policy, 1.
{¶ 10} The policy applies to bodily injury caused by an "occurrence" that takes place within the coverage territory and within the policy period.[2] Id. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 10. In this case, Hagopian claims that he was repeatedly exposed to "substantially the same general harmful conditions" which resulted in the inevitable event of the house toppling and injuring him. This claim falls within the contractual definition of an occurrence and brings Hagopian's tort case within the general liability language of the policy.
{¶ 11} The issue as to whether Hagopian's claims are specifically excluded from coverage by the policy is then raised. To be effective, exclusions in insurance policies must be clear and exact. Lane v. Grange Mut.l (1989), 45 Ohio St.3d 63, 543 N.E.2d 488. The policy at issue in this case state as follows:
{¶ 12} "This insurance does not apply to:
{¶ 13} "a. Expected or Intended Injury. `Bodily injury' or `property damage' expected or intended from the standpoint of the insured.
{¶ 14} "* * *
{¶ 15} "`Bodily injury' to
{¶ 16} "(1) An `employee' of the insured arising out of and in the course of"
{¶ 17} "(a) Employment by the insured; or
{¶ 18} "(b) Performing duties related to the conduct of the insured's business[.]" Policy, 2.
{¶ 19} The first exclusion claimed is that the policy does not cover intentional conduct. However, the complaint does not allege that the injury to Hapogian was deliberate, only that it was substantially certain to occur. The Supreme Court has held that there is a different standard for the two types of intentional torts. Harasyn v. Normandy Metals Inc. (1990), 49 Ohio St.3d 173, 551 N.E.2d 962.
{¶ 20} "The better view is to prohibit insurance only for those intentional torts where `the fact of insurance coverage can be related in some substantial way to the commission of wrongful acts of that character.' * * * In the case of a `direct intent' tort, the presence of insurance would encourage those who deliberately harm another. In torts where intent is inferred from `substantial certainty' of injury, the presence of insurance has less effect on the tortfeasor's actions because it was not the tortfeasor's purpose to cause the harm for which liability is imposed." Id. at 176.
{¶ 21} By differentiating between the two types of intentional torts, the Supreme Court held that exclusions of coverage for intentional torts applies to deliberate intent torts, not substantial certainty torts. Thus, the exclusion for an intentional tort does not apply in this case since the underlying act was alleged to be substantially certain to result in injury, not that the injury was the intended result.
{¶ 22} Next, we must determine whether the exclusion for injuries resulting from the performance of job duties applies in this case. In Maffett v. Moyer's Auto Wrecking, Inc. (June 7, 2000), Crawford App. No. 3-99-11, 3-99-12, unreported, this court has previously held that exclusionary language in a policy that prohibited coverage for injuries "arising out of and in the course of employment" does not apply to employer intentional tort cases. However, in this case, the language of the exclusionary clause is different. The policy here excludes coverage for all injuries occurring as a result of performing tasks of an employee's job. The injuries in this case occurred while Hagopian was performing his job duties. Hagopian's complaint alleges that the methods used to perform the job duties were not safe. Since Hagopian alleges that it was the performance of his job duties that caused the injury and the exclusionary clause specifically excludes coverage for injury caused by the performance of job duties, the language of this contract is more specific than that in Maffett. Unlike the contractual language in Maffett, the contractual language in this case is specific enough to properly exclude the tort alleged from coverage.[3] The trial court thus erred by determining that coverage was required. The assignments of error are sustained.
{¶ 23} The judgment of the Court of Common Pleas of Crawford County is reversed and the cause is remanded for further proceedings in accord with this judgment.
Judgment reversed.
SHAW, P.J. concurs.
HADLEY, J., concurs in judgment only.
[1] After the incident, Hagopian applied for and received worker's compensation benefits.
[2] There is no claim that the injury at issue occurred outside the coverage area or that the policy was not in effect at the time of the incident.
[3] The third prong of the test to demonstrate that an employer engaged in an intentional tort against an employee is to show that the employer required the employee to perform the dangerous task as part of their employment. Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108. This exclusion is drafted to exclude employer intentional torts for which the employee receives worker's compensation by specifying that the injury was the result of the employee doing his job. Thus, proof of the intentional tort would automatically trigger the exclusion as it is drafted.